No. 04-98-00340-CV


IN THE INTEREST OF A.R., M.T., R.T., & M.T., Jr., Children





From the 225th Judicial District Court, Bexar County, Texas


Trial Court No. 96-PA-00613


Honorable Carolyn Spears-Peterson, Judge Presiding


Opinion by: Karen Angelini, Justice

Sitting: Phil Hardberger, Chief Justice

 Alma L. López, Justice 

 Karen Angelini, Justice

Delivered and Filed: September 22, 1999


AFFIRMED

Nature of the case


 Andrea Rendon appeals a termination decree terminating her parental rights to A.R., M.T.,
R.T., and M.T., Jr. In her first and second issues, Rendon asserts that the evidence was factually
insufficient to support the termination decree. In her third issue, Rendon argues that the attorney
ad litem did not advocate the interests of the children. In her fourth issue, Rendon asserts that she
involuntarily signed the affidavit relinquishing her parental rights. We affirm.

Factual and Procedural Background

 Rendon is the biological mother of six children: C.R., D.R., A.R., M.T., R.T., and M.T., Jr.
Rendon is hearing impaired and requires the use of an interpreter and sign language to communicate
with others. With the exception of a few temporary jobs, Rendon's income is provided by
governmental assistance programs. In addition to financial assistance, the Department of Human
Services provided Rendon medical care, housing, parenting classes, instruction from a therapeutic
homemaker, and counseling on such issues as birth control and family dynamics. Rendon was first
referred to Child Protective Services ("CPS") in 1990. From 1990 to the time of trial, CPS had been
almost continuously involved with Rendon and her children.

 In 1996, the Texas Department of Protective & Regulatory Services ("TDPRS") removed the
children from Rendon's home and filed an original petition in a suit affecting the parent-child
relationship. The trial court appointed TDPRS as temporary managing conservator of Rendon's six
children. In September of 1997, Rendon signed an affidavit supporting the appointment of Mike
Brooks, the father of C.R. and D.R., as permanent managing conservator of C.R. and D.R. Rendon's
parental rights to C.R. and D.R. were not terminated. In October of 1997, CPS attempted to reunify
the family but concluded that it would be in the best interest of A.R. and M.T. to have Rendon's
rights terminated. Before trial, Rendon executed an affidavit relinquishing her parental rights to R.T.
and M.T., Jr. who had been living with their father's relatives. TDPRS proceeded to trial to
terminate Rendon's parental rights to A.R. and M.T. The jury found that the parent-child
relationship between Rendon and A.R. and M.T. should be terminated. On January 20, 1998, the
court entered a decree of termination in which the parent-child relationship was terminated between
Rendon and A.R., M.T., R.T., and M.T., Jr., who were eight, six, four, and three, respectively, at the
time of trial.

Standard of Review

 Involuntary termination proceedings are subject to strict scrutiny. Holick v. Smith, 685
S.W.2d 18, 20 (Tex. 1985). Parental rights can only be terminated upon a showing of clear and
convincing evidence. See Tex. Fam. Code Ann. 161.001 (Vernon Supp. 1999); In re G.M., 596
S.W.2d 846, 847 (Tex. 1980). When an appellant challenges the factual sufficiency of the evidence,
we use the intermediate standard of review of clear and convincing evidence. In re B.T., 954 S.W.2d
44, 46 (Tex. App.-San Antonio 1997, writ denied). In reviewing a jury's findings based on a clear
and convincing standard, we determine whether sufficient evidence was presented to produce in the
mind of a rational fact finder a "firm belief or conviction as to the truth of the allegations sought to
be established." Tex. Fam Code Ann. 101.007 (Vernon 1996); Id. (citing In re G.M., 596 S.W.2d
at 847). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be
given their testimony. Kerckhoff v. Kerckhoff, 805 S.W.2d 937, 939 (Tex. App.-San Antonio 1991,
no writ). The Court of Appeals may not substitute its opinion for that of the trier of fact merely
because we might have reached a different conclusion. Id.

Sufficiency of the evidence

 In her first and second issues, Rendon argues that the evidence was factually insufficient to
prove that she violated section 161.001(D) and (E) of the Family Code and that termination was in
the children's best interest.(1) The court may order termination of the parent-child relationship if the
court finds by clear and convincing evidence:

 (1) that the parent has:

 (D) knowingly placed or knowingly allowed the child
to remain in conditions or surroundings which
endanger the physical or emotional well-being of the
child;

 (E) engaged in conduct or knowingly placed the child
with persons who engaged in conduct which
endangers the physical or emotional well-being of the
child; and

 (2) that termination is in the best interest of the child.


Tex. Fam. Code Ann. 161.001(1)(D)-(E), (2) (Vernon Supp. 1999). Endanger means "to expose
to loss or injury; to jeopardize." Texas Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.
1987). Although endanger means more than a threat of metaphysical injury or the possible ill effects
of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child
or that the child actually suffers injury. Id. The jury was instructed to terminate the parent-child
relationship if it was proven by clear and convincing evidence that Rendon violated section (D) or
(E) and that termination was in the children's best interest. The jury found that the parent-child
relationship should be terminated.

 A review of the evidence shows that TDPRS identified five problems attributable to Rendon
which endangered the physical and emotional well-being of the children. Rendon's problems
included: (1) failing to provide diapers, clothing and food for her children; (2) maintaining
relationships with abusive boyfriends; (3) neglecting the children's medical needs; (4) exercising
poor judgment with regard to her children; and (5) failing to control her children.

 CPS presented evidence of Rendon's failure to provide basic necessities for her children and
of the poor living conditions in which they lived. Various social workers testified that the children
wore dirty clothes, had not been bathed, and were hungry. Case workers testified that Rendon's
home was dirty and the children had head lice. Rendon and her family were evicted from public
housing because of the filthy condition of their apartment. Although Rendon received governmental
financial assistance, she was unable to budget her money to provide the necessities for her children.

 Along with poor living conditions, Rendon was involved with an abusive boyfriend, Marcos
Teran, with whom she had three children: M.T., R.T., and M.T., Jr.(2)
 Rendon testified that Teran
hit her and the children. Teran admitted that he had hit Rendon. Bruce Orey, a CPS Specialist,
testified that in February of 1991 he received a phone call from the children's day care because A.R.
had a scrape across her face. Orey testified that the children told him that Teran threw a toy at A.R.
Teran admitted to throwing the toy at A.R. Mark Feichtinger, an employee of TDPRS, testified that
in June of 1993 he responded to a referral and discovered that D.R. had been hit in the face with a
belt. According to the testimony, Teran was unemployed, stole Rendon's money, and used drugs.

 The TDPRS also presented evidence that Rendon neglected the children's medical needs.
In May of 1990, A.R. was taken to the hospital for a seizure which the nurse believed to have been
caused by malnutrition. In October of 1990, CPS received another referral because C.R. and D.R.,
who were two and three at the time, had burn marks on their arms from reaching over a toaster while
making toast. Case workers testified that the children had severe diaper rash and head lice. In
September of 1995, CPS received a call from Rendon's neighbor because M.T. had an upset
stomach. Apparently, M.T. was suffering from food poisoning because she had eaten spoiled
chicken. The caseworker took M.T. to the doctor for treatment. In May of 1996, a CPS caseworker,
visited the Rendon home and noticed that D.R.'s foot was extremely swollen. Rendon had not
sought medical attention although she had kept D.R. home from school for several days.

 Additionally, TDPRS presented evidence that Rendon exercised poor judgment. In October
of 1997, CPS attempted to reunify the family. CPS returned A.R. and M.T. to Rendon and told her
to remain with the girls at all times. Rendon, however, allowed M.T. to travel with Teran's family
to visit Teran in prison. Rendon asserts that the visit did not endanger M.T. and that M.T. was able
to spend time with her father whom she had not seen in over two years. Christina Beltran, a CPS
caseworker, however, testified that Rendon exercised poor judgment in allowing M.T. to visit Teran
after she had been told to stay with the girls at all times. Beltran testified that Rendon was unable
to follow CPS's rules.

 Lastly, TDPRS contends that Rendon is unable to control her children. Numerous witnesses
testified that the children played outside unsupervised. In 1994, Rendon and her children were living
at the Salvation Army Shelter. Employees at the shelter called CPS because the children were being
left alone and allowed to do whatever they pleased.

 Based on the foregoing evidence, we find that sufficient evidence was presented to produce
in the mind of a rational fact finder, a firm belief or conviction as to the truth of the allegations that
Rendon knowingly placed or allowed her children to remain in conditions or surroundings which
endangered the physical or emotional well-being of the children and engaged in conduct or
knowingly placed the children with persons who engaged in conduct which endangered the physical
or emotion well-being of the children. Thus, the evidence was factually sufficient to prove that
Rendon violated section (D) and (E) of 161.001(1) of the Texas Family Code. We overrule
Rendon's first issue.


Best Interest of the Children

 In her second issue, Rendon claims the evidence presented was factually insufficient to prove
that it was in the children's best interest for the parent-child relationship to be terminated. In
addition to an affirmative finding under 161.001(1), the court must find that termination of parental
rights is in the best interest of the child. Tex. Fam. Code Ann. 161.001(2) (Vernon Supp. 1999).
In making this determination, the Texas Supreme Court has enumerated several factors including:
the desires of the child; the present and future emotional and physical needs of the child; the present
and future emotional and physical danger to the child; the parenting abilities of the individual
seeking custody; the stability of the home or proposed placement; the parent's acts or omissions
indicating that the existing parent-child relationship is not a proper one; and any excuse for the
parent's acts or omissions. Holley v. Adams, 544 S.W.2d 367, 372 (Tex. 1976); In re H.C. and S.C.,
942 S.W.2d 661, 664 (Tex. App.-San Antonio 1997, no writ). Rendon argues that termination is
not in the best interests of A.R. and M.T. because they have expressed a desire to live with her and
they have no developmental problems. Rendon claims that she does not use drugs or alcohol and
has never physically abused the children.

 Although evidence was presented which reflected that A.R. and M.T. expressed a desire to
live with Rendon and were not suffering any severe emotional problems, the evidence showed that
the physical needs of the children were inadequately met while they were living with Rendon. The
problems affecting the children's physical needs include the following: unsanitary living conditions,
medical neglect, failure to supervise and control, and failure to protect the children from physical
abuse. Rendon testified that she is making efforts to become a better parent and is receiving training
from Frances Maldonado, an employee of Disability Services of the Southwest, to learn how to
cook, clean, wash clothes, and manage her money. Rendon offered the testimony of Loretta Teran,
the wife of Rendon's ex-husband, to show that she was able to control A.R. and M.T. when they
were the only two children in the home. The evidence showed that, in fact, Rendon had participated
in many parenting classes during CPS's involvement. Beltran, however, testified that Rendon's
improvements were temporary and inconsistent, and that Rendon regressed once the caseworker was
reassigned from her case.

 The jury found that it was in the children's best interest to terminate Rendon's parental
rights. We cannot substitute our judgment as to the credibility of each witness nor the weight to be
given their testimony. See Kerckhoff, 805 S.W.2d at 940. We find sufficient evidence which could
produce in the mind of a rational fact finder a firm belief or conviction as to the truth of the
allegation that termination of the parent-child relationship is in the best interest of A.R. and M.T.
We overrule the second issue.

Attorney Ad Litem

 In her third issue, Rendon argues that the children were denied representation because their

appointed attorney ad litem did not advocate their interests. In a termination case filed by a
governmental entity, the court must appoint an attorney ad litem to represent the interests of the
child. Tex. Fam. Code Ann. 107.012 (Vernon 1996). An attorney ad litem shall investigate the
facts of the case, review copies of the child's relevant medical, psychological, and school records
and interview the child and individuals with significant knowledge of the child's history and
condition. See id. 107.014 (Vernon Supp. 1999).

 Rendon alleges that the attorney ad litem did not advocate the wishes of A.R. and M.T. but
rather advocated what the ad litem considered to be in the best interest of the children. The ad litem,
in fact, argued that termination was in the children's best interest. Rendon urges that the attorney
ad litem was confused about her role and acted as a guardian ad litem by advocating what she
considered to be the best interest of the children. First, we note that Rendon failed to make any
objections to the attorney ad litem's position that the parent-child relationship should be terminated.
Several months before trial, the attorney ad litem filed a counter-petition to terminate the parent-child relationship and advocated this position during voir dire. Rendon failed to lodge any
objections to statements made by the attorney ad litem during voir dire and closing argument and
failed to make this complaint in her motion for new trial. Thus, Rendon complains about the
attorney ad litem's position for the first time on appeal. Rule 33.1(a) of the Rules of Appellate
Procedure provide: "As a prerequisite to presenting a complaint for appellate review, the record must
show that: the complaint was made to the trial court by a timely request, objection or motion . . . ."
Tex. R. App. P. 33.1(a)(1). Because Rendon failed to make a complaint to the trial court, the
complaint is not preserved. We overrule the third issue.

Involuntary Relinquishment

 In her fourth issue, Rendon argues that she involuntarily signed the affidavit of
relinquishment

of her parental rights to R.T. and M.T., Jr. Rendon contends that she did not sign the affidavit
voluntarily because she signed it under the undue influence and overreaching of TDPRS. See Neal
v. Texas Dep't Human Servs., 814 S.W.2d 216, 219 (Tex. App.-San Antonio 1991, writ denied)
(finding that affidavit signed under undue influence was involuntary). In her brief, Rendon contends
that she signed the affidavit because TDPRS told her that if she did not sign the affidavit, TDPRS
would file suit to terminate her parental rights to her remaining children. Rendon does not point to
any testimony to support her contention that she signed the affidavit involuntarily. After reviewing
the record, we find no testimony concerning the events surrounding the signing of the affidavit of
relinquishment. Further, we note that Rendon failed to plead undue influence as an affirmative
defense and failed to request a jury question on undue influence. Tex. R. Civ. P. 94; Tex. R. Civ.
P. 278. Because no evidence exists to support Rendon's assertion that she signed the affidavit
because of undue influence or overreaching, we do not find that Rendon signed the affidavit
involuntarily. Thus, we overrule the fourth issue.

 Accordingly, we affirm the judgment.


 Karen Angelini, Justice

DO NOT PUBLISH

1. Rendon's first and second issues only pertain to the termination of her parental rights to A.R. and M.T. Because
she had signed an affidavit relinquishing her rights to R.T. and M.T., Jr. before trial, no evidence was presented and no
issues were submitted to the jury regarding the termination of Rendon's parental rights to R.T. and M.T., Jr.
2. Teran voluntarily relinquished his rights to R.T. and M.T., Jr. Teran sought custody of M.T. at trial but the
jury found that his parental rights should be terminated. Teran is currently incarcerated and has not appealed the
termination of his parental rights.